# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

American Civil Liberties Union/Eastern )
    Missouri Fund, a Missouri non-profit )
    corporation, doing business as )
    American Civil Liberties Union of )
    Missouri Foundation, and )
    )
Diane K. Balogh, )
    )
        Plaintiffs, )  No.  2:13-cv-4223
    )
v. )
    )
George A. Lombardi, in his official capacity as )
    Director of the State of Missouri )
    Department of Corrections, )
    )
        Defendant. )

## VERIFIED COMPLAINT

### INTRODUCTION

    1.    This is a civil rights action challenging the as-applied constitutionality of Mo. Rev. Stat. § 546.720 as violating the Free Speech and Free Press Clauses of the First Amendment and the Due Process Clause of the Fourteenth Amendment.

    2.    Section 546.720.3 prohibits any person "without the approval of the director of the department of corrections [from] knowingly disclos[ing] the identity of a current or former member of an execution team or disclos[ing] a record knowing that it could identify a person as being a current or former member of an execution team." Plaintiffs, a non-profit advocacy organization and one of its employees, have in the past revealed, and would like in the future to reveal, the identities of individuals who are members or former members of an execution team.

1

3. Plaintiffs bring suit pursuant to 42 U.S.C. § 1983 seeking prospective relief, including a declaration that § 546.720 is unconstitutional as applied and appropriate injunctive relief to safeguard their constitutional rights.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 42 U.S.C. § 1983 over Plaintiffs' claims of deprivation under color of state law of rights, privileges, or immunities secured by the Constitution.

5. In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' civil action arising under the Constitution of the United States.

6. In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1343 to redress the deprivation, under color of state law, of any right, privilege, or immunity secured by the Constitution of the United States.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and L.R. 3.1(b)(1) both because the defendant resides in Cole County and because a substantial part of the events giving rise to the claims occurred in Cole County.

## PARTIES

8. Plaintiff American Civil Liberties Union/Eastern Missouri Fund is a non-profit corporation duly registered in, and operating throughout, the State of Missouri and doing business as American Civil Liberties Union of Missouri Foundation. It is referred to hereafter as the ACLU of Missouri.

9. Plaintiff Diane K. Balogh is a resident of Missouri employed by the ACLU of Missouri. Amongst her responsibilities are publishing news and information to the ACLU of

Missouri's members and the public as well as publishing the ACLU of Missouri's website at www.aclu-mo.org.

10. The ACLU of Missouri's mission is to preserve and expand the civil liberties guaranteed by the Bill of Rights and the Missouri Constitution through its litigation, legislative, and public education programs.

11. As part of its public education, advocacy, and legislative work, the ACLU of Missouri regularly publishes information and material in printed and electronic form for distribution to the public throughout Missouri, including in Cole County.

12. Defendant George A. Lombardi is the Director of the State of Missouri's Department of Corrections. Lombardi is responsible for establishing an execution protocol that sets forth the procedures and methods the Missouri Department of Corrections will use to kill persons who have been sentenced to death. He is sued solely in his official capacity.

13. In all actions relevant to this Complaint, Lombardi and his agents act under color of state law.

## *FACTS*

14. Since the 1950s, the ACLU has maintained a policy of opposition to government censorship of unclassified information. In the ACLU's view, government censorship of unclassified information is an unconstitutional abridgement of free expression because it permits the government to arbitrarily suppress news and information of public interest and thereby narrow the marketplace of opinion. Further, in the ACLU's view, the trend toward unwarranted secrecy has increasingly concealed from the public many government practices of doubtful constitutionality. As a result of this policy, the ACLU of Missouri actively advocates for maintenance of the public's right to know under the First Amendment.

3

15. In addition, ACLU policy on capital punishment opposes the death penalty because it denies equal protection of the law and is cruel and unusual punishment. Furthermore, the application of the death penalty is inconsistent with fundamental guarantees of due process of law and is disproportionately inflicted on the poor and minorities.

16. The ACLU of Missouri has long been concerned about the integrity of the execution procedures utilized by the Missouri Department of Corrections. To educate its members and the public about the process being deployed on behalf of the people of Missouri, the ACLU of Missouri has frequently requested public records. For instance, the ACLU of Missouri represented the plaintiff in <u>Rafert v. Missouri Department of Corrections</u>, No. 01CV325895 (Cole Co. Cir. Ct. 2001), a Sunshine Law case in which the Department of Corrections refused to disclose its execution protocol.

17. In addition, the ACLU of Missouri made Sunshine Law requests for public records related to the execution-drug supply in 2010 and 2011 and published the records received in response on its website.

18. In furtherance of its mission, on August 26, 2013, two employees of the ACLU of Missouri made a request under the Sunshine Law to view information related to Missouri's supply of execution drugs. In particular, they sought information about who was supplying execution drugs to the Missouri Department of Corrections.

19. On October 4, 2013, when the Department of Corrections still had not produced a single record and would not return telephone calls, the ACLU of Missouri filed a lawsuit under the Sunshine Law. The case is pending in Cole County Circuit Court.

4

20. Shortly after the lawsuit was filed, the Department of Corrections began disclosing public records. The first batch of records was received on October 8, 2013. Another set was received on October 18, 2013.

21. When the records were received from the Department of Corrections, Plaintiff Balogh scanned them and placed them on the ACLU of Missouri's website along with commentary and an advocacy alert encouraging members and the public to urge the Governor to allow public input when creating a new protocol for administering the death penalty.

22. Between October 8, 2013, and October 22, 2013, there were more than 460 views of the ACLU of Missouri's webpage dedicated to the records. The average time visitors remained on the page exceeded twenty minutes.

23. The contents of the records were widely reported in the media, including revelations about the ethically and legally questionable ways in which the Department of Corrections had obtained and maintained its supply of execution drugs.

24. The day after the ACLU of Missouri reported the document release and made the first set of records available to the public, the Department of Corrections announced that it would return a portion of its execution-drug supply. The public records revealed that the supplier of the drug, Morris & Dickson, had pleaded with the state for more than a year to return the vials, which had been shipped to the Department of Corrections by mistake and in violation of Morris & Dickson's agreement with the drug's manufacturer, Fresenius Kabi, not to provide the drug for executions.

25. At the time the Morris & Dickson supply of execution-drug was returned, the Governor of Missouri announced that planned executions would go ahead with the remaining supply of execution-drugs.

5

26. The public records revealed that the remaining supply of execution drugs was sold to Missouri by Mercer Medical, LLC, without authorization from the manufacturer, Hospira. Indeed, the records show that Mercer Medical forwarded Hospira's notice that its drugs should not be sold to departments of corrections and commented, inexplicably, "not sure how this is going to affect our ability to provide these products in the future, however these restrictions do not currently prevent Mercer Medical shipping you propofol." Prior to publication of the public records on the ACLU of Missouri's website, Hospira did not know the drug that it intended for medical use would be used to kill inmates. After learning this fact, Hospira requested Mercer Medical secure the return of the execution-drug.

27. Shortly thereafter, on October 11, 2013, the Governor halted the execution planned for October 23, 2013, and directed the Department of Corrections to develop a new execution protocol.

28. The public records revealed the identity of individuals and Department of Corrections employees who supply the chemicals used in executions.

29. The public records led to extensive news reporting about the questionable ways in which the Department of Corrections procures execution-drugs and the methods of suppliers of execution-drugs.

30. Until the afternoon of October 22, 2013, the ACLU of Missouri maintained the public records on its website.

31. On October 22, 2013, the ACLU of Missouri and Balogh learned of the Department of Corrections' October 18, 2013, execution protocol.

32. As relevant to this suit, the October 18, 2013, protocol redefines the execution team. Pursuant to the October 18, 2013, protocol: "The execution team consists of department

employees and contracted medical personnel including a physician, nurse, and pharmacist. The execution team also consists of anyone selected by the department director who provides direct support for the administration of lethal chemicals, including individuals who prescribe, compound, prepare, or otherwise supply the chemicals for use in the lethal injection procedure."

33. In 2007, the Missouri legislature amended Mo. Rev. Stat. § 546.720.

34. Section 546.720 now provides that, "[t]he director of the department of corrections shall select an execution team which shall consist of those persons who administer lethal gas or lethal chemicals and those persons, such as medical personnel, who provide direct support for the administration of lethal gas or lethal chemicals. The identities of members of the execution team, as defined in the execution protocol of the department of corrections, shall be kept confidential."

35. In addition, § 546.720 provides that "[a] person may not, without the approval of the director of the department of corrections, knowingly disclose the identity of a current or former member of an execution team or disclose a record knowing that it could identify a person as being a current or former member of an execution team. Any person whose identity is disclosed in violation of this section shall: (1) Have a civil cause of action against a person who violates this section;(2) Be entitled to recover from any such person: (a) Actual damages; and (b) Punitive damages on a showing of a willful violation of this section."

36. Neither the ACLU of Missouri nor Balogh have Lombardi's approval to disclose the identity of current or former members of the execution team, as defined by the October 11, 2013, execution protocol.

37. The records the ACLU of Missouri obtained from the Department of Corrections and that Balogh posted to the ACLU of Missouri's website reveal, or could reveal, the identity of

7

current and former members of the execution team, as defined by the October 18, 2013, execution protocol.

38. The ACLU of Missouri desires to disclose the identity of members of the execution team so that it might advocate against the use of the execution protocol and petition state officials not to utilize unqualified members of the execution team.

39. Any disclosure of the identity of a member of the execution team by the ACLU of Missouri would be knowingly made.

40. The ACLU of Missouri's advocacy and public education efforts are thwarted by § 546.720, which has had a chilling effect on Plaintiffs. In particular, Plaintiffs have removed the public records they obtained from the Department of Corrections from their website because those records disclose, or could disclose, the identity of members or former members of the execution team, as defined by the October 18, 2013, policy, and have otherwise refrained from disclosing the identity of any member of the execution team.

## COUNT I
### *Claim Under Free Speech and Free Press Clauses*

41. Plaintiffs repeat, re-allege, and incorporate by reference the allegations in the foregoing paragraphs of this Complaint as if set forth verbatim.

42. Section 546.720 restricts speech and press activity such that a substantial number of its applications are unconstitutional judged in relation to any legitimate applications.

43. Section 546.720 is a content-based restriction of speech and press activity that is not narrowly tailored to promote a compelling government interest.

44. Section 546.720 is not narrowly tailored to achieve a significant government interest.

8

45. Section 546.720 fails to provide Plaintiffs with ample alternatives to engage in protected speech and press activity.

46. Section 546.720 is a prior-restraint in that it requires Plaintiffs to obtain approval of Defendant before engaging in protected speech and press activity.

47. Section 546.720 affords Defendant unfettered discretion to authorize, or not, disclosure of the identities of the execution team and to determine whose identity may not be disclosed without prior permission by defining "execution team" in the execution protocol.

## COUNT II
### *Claim Under Due Process Clause*

48. Plaintiffs repeat, re-allege, and incorporate by reference the allegations in the foregoing paragraphs of this Complaint as if set forth verbatim.

49. Insofar as it restricts any person from "disclos[ing] a record knowing that it could identify a person as being a current or former member of an execution team," § 546.720 fails to give Plaintiffs fair notice of whether the disclosure of any particular public record could identify a person as a current or former member of an execution team in that Plaintiffs do not know the identities of every current or former member of an execution team; the definition of execution team in the October 18, 2013, protocol is broad and vague; and Plaintiffs are prohibited from disclosing public records provided to them by the Department of Corrections and Department employees.

WHEREFORE Plaintiffs pray this Court:

    A. Upon proper motions, issue a temporary restraining order and a preliminary injunction necessary to prevent the continuing violation of their constitutional rights;

9

B. Enter declaratory judgment, pursuant to 42 U.S.C. § 1983, that Mo. Rev. Stat. § 546.720 is unconstitutional as-applied;

C. Enter a permanent injunction;

D. Award Plaintiffs their costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 or any other applicable law; and

E. Allow to Plaintiffs such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827
GRANT R. DOTY, #60788
AMERICAN CIVIL LIBERTIES UNION
 OF MISSOURI FOUNDATION
454 Whittier Street
St. Louis, Missouri 63108
Telephone: (314) 652-3114
Facsimile: (314) 652-3112


**ATTORNEYS FOR PLAINTIFFS**

## VERIFICATION

I have studied the allegations of the Verified Complaint and, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct based upon my personal knowledge as Executive Director of the American Civil Liberties Union of Missouri Foundation.

<u>October 23, 2013</u>  <u>/s/ Jeffrey A. Mittman</u>
Date  Jeffrey A. Mittman