IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| American Civil Liberties of Missouri Foundation, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 2:13-cv-4223-MJW ) |
| George A. Lombardi, | ) ) |
| Defendant. | ) ) |

**Suggestions in Support of Motions for**
**Temporary Restraining Order and Preliminary Injunction**

**I.     Introduction**

Plaintiff ACLU of Missouri Foundation is an entity that engages in public advocacy opposing government censorship of unclassified information and the death penalty. *Verified Complaint*, Doc. # 1, at ¶¶ 8, 11, 14-15. It has long been concerned about the integrity of the execution procedures utilized by the Missouri Department of Corrections. To educate its members and the public about the process being deployed in the name of the people of Missouri, the ACLU of Missouri has frequently requested public records. *Id.* at ¶¶ 16-17.

Most recently, on August 26, 2013, two employees of the ACLU of Missouri made a request under the Sunshine Law to view information related to Missouri's supply of execution drugs. *Id*. at ¶ 18. In particular, they sought information about who was supplying execution drugs to the Missouri Department of Corrections. *Id*. On October 4, 2013, when the Department of Corrections still had not produced a single record and would not return telephone calls, the ACLU of Missouri filed a lawsuit under the Sunshine Law. *Id.* at ¶ 19. Shortly after the lawsuit was filed, the Department of Corrections began disclosing public records. *Id*. at ¶ 20. The first

1

batch of records was received on October 8, 2013. *Id*. Another set was received on October 18, 2013. *Id*. The public records revealed the identity of individuals and Department of Corrections employees who supply the chemicals used in executions. *Id*. at ¶ 28.

When the records were received from the Department of Corrections, Plaintiff Diane Balogh scanned them and placed them on the ACLU of Missouri's website along with commentary and an advocacy alert encouraging members and the public to urge the Governor to allow public input when creating a new protocol for administering the death penalty. *Id*. at ¶ 21. Between October 8, 2013, and October 22, 2013, there were more than 460 views of the ACLU of Missouri's webpage dedicated to the records. *Affidavit of Diane Balogh* at ¶ 2. The average time visitors remained on the page exceeded twenty minutes. *Id.* at ¶ 3. The contents of the records were widely reported in the media, including revelations about the ethically and legally questionable ways in which the Department of Corrections had obtained and maintained its supply of execution drugs. *Verified Complaint*, Doc. # 1, at ¶ 23.

The day after the ACLU of Missouri reported the document release and made the first set of records available to the public, the Department of Corrections announced that it would return a portion of its execution-drug supply. *Id*. at ¶ 24. The public records revealed that the supplier of the drug, Morris & Dickson, had pleaded with the state for more than a year to return the vials, which had been shipped to the Department of Corrections by mistake and in violation of Morris & Dickson's agreement with the drug's manufacturer, Fresenius Kabi, not to provide the drug for executions. *Id*. At the time the Morris & Dickson supply of execution-drug was returned, the Governor of Missouri announced that planned executions would go ahead with the remaining supply of execution-drugs. *Id*. at ¶ 25.

2

The public records revealed that the remaining supply of execution drugs was sold to Missouri by Mercer Medical, LLC, without authorization from the manufacturer, Hospira. *Id*. at ¶ 26. Indeed, the records show that Mercer Medical forwarded Hospira's notice that its drugs should not be sold to departments of corrections and commented, inexplicably, "not sure how this is going to affect our ability to provide these products in the future, however these restrictions do not currently prevent Mercer Medical shipping you propofol." *Id*. Prior to publication of the public records on the ACLU of Missouri's website, Hospira did not know the drug that it intended for medical use would be used to kill inmates. *Id*. After learning this fact, Hospira requested Mercer Medical secure the return of the execution-drug. *Id*.

Shortly after Hospira demanded the return of the drugs it manufactured, on October 11, 2013, the Governor halted the execution planned for October 23, 2013, and directed the Department of Corrections to develop a new execution protocol. *Id*. at ¶ 27.

The public records led to extensive news reporting about the questionable ways in which the Department of Corrections procures execution-drugs and the methods of suppliers of execution-drugs. *Id*. at ¶ 29. Until the afternoon of October 22, 2013, the ACLU of Missouri maintained the public records on its website. *Id*. at ¶ 30. On October 22, 2013, the ACLU of Missouri and Balogh learned of the Department of Corrections' October 18, 2013, execution protocol. *Id*. at ¶ 31.

The protocol redefines the execution team so that it now includes "anyone selected by the department director who provides direct support for the administration of lethal chemicals, including individuals who prescribe, compound, prepare, or otherwise supply the chemicals for use in the lethal injection procedure." *Id*. at ¶ 32. In 2007, the Missouri legislature amended Mo. Rev. Stat. § 546.720, which provides that, "[t]he director of the department of corrections shall

select an execution team which shall consist of those persons who administer lethal gas or lethal chemicals and those persons, such as medical personnel, who provide direct support for the administration of lethal gas or lethal chemicals. The identities of members of the execution team, as defined in the execution protocol of the department of corrections, shall be kept confidential." *Id*. at ¶¶ 33-34. In addition, according to statute, "[a] person may not, without the approval of the director of the department of corrections, knowingly disclose the identity of a current or former member of an execution team or disclose a record knowing that it could identify a person as being a current or former member of an execution team. Any person whose identity is disclosed in violation of this section shall: (1) Have a civil cause of action against a person who violates this section;(2) Be entitled to recover from any such person: (a) Actual damages; and (b) Punitive damages on a showing of a willful violation of this section." *Id*. at ¶ 35.

Neither the ACLU of Missouri nor Balogh have Lombardi's approval to disclose the identity of current or former members of the execution team, as defined by the execution protocol. *Id*. at ¶ 36. The records the ACLU of Missouri obtained from the Department of Corrections and that Balogh posted to the ACLU of Missouri's website reveal, or could reveal, the identity of current and former members of the execution team, as defined by the October 18, 2013, execution protocol. *Id*. at ¶ 37. As a result, Plaintiffs have removed the records from their website. *Affidavit of Diane Balogh* at ¶ 4.

Since removing the records from the ACLU of Missouri website, the ACLU of Missouri has received requests from two media outlets for copies of the records that disclose the identity of members of the execution team. *Id.* at ¶ 5. Plaintiffs have not fulfilled those requests because of § 546.720. *Id*. at ¶ 6.

4

**II.     Argument**

   **A.     Standard for Temporary Restraining Order and Preliminary Injunction**

In considering whether to issue a preliminary injunction, this Court must determine: (a) whether the plaintiff is likely to prevail on the merits, (b) if there exists a threat of irreparable harm to the plaintiffs absent the injunction, (c) the balance between this harm and the injury that the injunction's issuance would inflict upon defendant, and (d) what is in the public interest. *See Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981); *accord Lane v. Lombardi*, 2:12-CV-4219-NKL, 2012 WL 5873577, *1 (W.D. Mo. Nov. 15, 2012). The standard for a temporary restraining order is the same as the standard for a preliminary injunction. *See Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367 (8th Cir. 1991).

   **B.     First Amendment Implications**

This case implicates both the Free Speech and the Free Press Clauses of the First Amendment. Each is applicable to the states through the Fourteenth Amendment. *See Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 707, 51 S. Ct. 625, 628, 75 L. Ed. 1357 (1931) ("It is no longer open to doubt that the liberty of the press and of speech is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action."). Corporations like the ACLU of Missouri have free speech rights. "On certain topics corporations may possess valuable expertise, leaving them the best equipped to point out errors or fallacies in speech of all sorts, including the speech of candidates and elected officials." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 364, 130 S. Ct. 876, 912, 175 L. Ed. 2d 753 (2010).

The burden is on Defendant to demonstrate that Mo. Rev. Stat. § 546.720 is constitutional. Although a duly enacted statute is ordinarily presumed to be constitutional, where

5

it allegedly regulates the exercise of First Amendment rights, the burden is on the statute's proponent to establish the statute's constitutionality. *Phelps-Roper v. Koster*, 713 F.3d 942, 949 (8th Cir. 2013).

Finally, the fact that § 546.720 restricts First Amendment activity means that consideration of the likelihood of success on the merits is decisive to the question of whether an injunction should issue. "In a First Amendment case, ... the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue." *Phelps–Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps–Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012). "'When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied.'" *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc) (quoting *Phelps–Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011) (per curiam) *vacated on reh'g*, 705 F.3d 845 (8th Cir. 2012)).

    **C.**    **Likelihood of Success on the Merits**

Plaintiffs are likely to succeed on the merits of their as-applied challenge to § 546.720 under the First Amendment.

Section 546.720 imposes a prior restraint on speech. "A person may not, <u>without the approval of the director of the department of corrections</u>, knowingly disclose the identity of a current or former member of an execution team or disclose a record knowing that it could identify a person as being a current or former member of an execution team." Mo. Rev. Stat. § 546.720. "A prior restraint exists when the enjoyment of protected expression is contingent upon the approval of government officials." *Dream Palace v. Cnty. of Maricopa*, 384 F.3d 990,

6

1001 (9th Cir. 2004) (citing *Near v. Minnesota,* 283 U.S. 697, 711–13, 51 S. Ct. 625, 75 L. Ed. 1357 (1931)). Here, approval of Defendant Lombardi is required before Plaintiffs may disclose the identity of a current or former member of an execution team or records that might disclose such a person's identity. The facts giving rise to this motion demonstrate how the statute operates as a prior restraint: two media outlets have requested copies of records from Plaintiffs, but Plaintiffs violate the statute if they disclose those records without Defendant's prior approval.

The burden of proving a prior restraint is permissible is especially steep. The Supreme Court has repeatedly held that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S. Ct. 631, 639, 9 L. Ed. 2d 584 (1963). Indeed, "[t]he presumption against prior restraints is heavier-and the degree of protection broader-than that against limits on expression imposed by criminal penalties." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558-59, 95 S. Ct. 1239, 1246, 43 L. Ed. 2d 448 (1975).

As a prior restraint the statute is unconstitutional as-applied here because it grants unfettered discretion to Defendant to authorize, or not, disclosure of the identity of members of the execution team.[1] A prior-restraint scheme may not delegate overly broad discretion to a government official. *Forsyth Cnty., Ga. v. Nationalist Movement,* 505 U.S. 123, 130, 112 S. Ct. 2395, 120 L. Ed.2d 101 (1992) (citing *Freedman v. Maryland,* 380 U.S. 51, 56, 85 S. Ct. 734, 13 L. Ed.2d 649 (1965)). In *Forsyth County*, the Supreme Court struck down a county ordinance because it conditioned issuance of a permit on payment of a fee up to $1000 and gave a county official discretion to "adjust the amount to be paid" to cover administrative or public safety expenses. *Id.* The Court held that because the fee was essentially "left to the whim of the

---

[1] The statute also provides Defendant unlimited discretion to define <u>who</u> is a part of the execution team.

7

administrator" with no articulated standards, the ordinance violated the First Amendment. *Id.* In this case, there are no articulated standards for when Defendant may authorize disclosure of the identity of a member of the execution team. As a result, any decision to do so is "left to the whim" of Defendant. As a result, Plaintiffs are likely to succeed on the merits of their First Amendment claim.

Plaintiffs are likely to succeed on the merits of their First Amendment claim for the addition reason that § 546.720 is a content-based restriction on speech that, as-applied, does not further a compelling government interest.

Section 546.720 operates as a content-based restriction because whether a record or name can be disclosed is determined by its content. Records that do not contain the identity of a member or former member of an execution team, as defined by the protocol, may be disclosed without repercussion. Records that might do so cannot be disclosed without Defendant's prior permission. In other words, the legality of expression is determined by whether that expression fits in the categories prohibited by the statute: the identity of a current or former member of the execution team or record that might identify such a person. One must look at the content of disclosed information to determine whether it is restricted. *See Whitton v. City of Gladstone, Mo.*, 54 F.3d 1400, 1404 (8th Cir. 1995) (regulation content-based because signs identical in every way except words written on them are regulated differently). A speech restriction "is impermissibly content-based [where] 'the message conveyed determines whether the speech is subject to the restriction.'" *Neighborhood Enterprises*, 644 F.3d at 736 (internal citations omitted).

"With rare exceptions, content discrimination in regulations of the speech of private citizens on private property or in a traditional public forum is presumptively impermissible, and

8

this presumption is a very strong one." *City of Ladue v. Gilleo*, 512 U.S. 43, 59 (1994); *see R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992)("[c]ontent-based regulations are presumptively invalid."). "Content-based regulations are presumptively invalid, and the Government bears the burden to rebut that presumption." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 817, 120 S. Ct. 1878, 1888, 146 L. Ed. 2d 865 (2000) (quotations and citations omitted). A content-based restriction is permissible only where it applies to a specific category of speech that has been historically restricted. *See United States v. Alvarez*, 132 S. Ct. 2537, 2544, 183 L. Ed. 2d 574 (2012) (plurality).

As applied here, § 546.720 restricts the disclosure of the identity of persons who supply execution-drugs to the Missouri Department of Corrections. There is no historic tradition of keeping the supplier of execution-drugs secret. Missouri itself disclosed the identity of execution-drug suppliers earlier this month to Plaintiffs—in the very documents Plaintiffs want to redisclose to media outlets. The Supreme Court has repeatedly rejected such restrictions. The state cannot constitutionally prohibit publication of the lawfully obtained name of the victim of a sexual offense. *The Florida Star v. B.J.F.*, 491 U.S. 524, 109 S. Ct. 2603, 105 L. Ed. 2d 443 (1989). A state statute prohibiting publication, "without the written approval of the juvenile court, the name of any youth charged as a juvenile offender" violates the First Amendment. *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 99 S. Ct. 2667, 61 L. Ed. 2d 399 (1979). The First Amendment protects the publication of the publicly revealed name of a deceased rape victim. *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 95 S. Ct. 1029, 43 L. Ed. 2d 328 (1975). To restrict publication of names, the state must demonstrate, among other things, that doing so is necessary to further a state interest of the highest order. *The Florida Star*, 491 U.S. at 537, 109 S. Ct. at 2611. The United States District Court for the District of Arizona recently concluded that barring

information about lethal-injection drugs, including as most relevant here the manufacturer of the drugs, is not permissible under the First Amendment. *See Schad v. Brewer*, CV-13-2001-PHX-ROS, 2013 WL 5551668 (D. Ariz. Oct. 7, 2013).

    D. Remaining Dataphase Factors

When a plaintiff has shown a likely violation of his First Amendment rights, the other preliminary injunction requirements are generally deemed to have been satisfied. *Swanson*, 692 F.3d at 870; *accord Phelps-Roper v. Cnty. of St. Charles, Mo.*, 780 F. Supp. 2d 898, 900-01 (E.D. Mo. 2011). There is no basis for departing from the general rule here.

A restriction of protected expressive activity constitutes irreparable harm. It is well-settled that a "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). Plaintiffs have removed records from their website and refused to disclose records to media outlet so as not to violate § 546.720. This self-censoring is a First Amendment harm. Where a First Amendment injury is occurring at the time of a motion for preliminary injunction and the movant has shown a sufficient probability of success, a preliminary injunction is appropriate. *Lane*, 2012 WL 5873577 at *6. Because Plaintiffs have established they are likely to succeed on the merits, they have also established irreparable harm as the result of the deprivation. *See e.g., Marcus v. Iowa Pub. Television*, 97 F.3d 1137, 1140-41 (8th Cir.1996); *accord Beussink ex rel. Beussink v. Woodland R-IV Sch. Dist.*, 30 F. Supp. 2d 1175, 1180 (E.D. Mo. 1998).

"The balance of equities… generally favors the constitutionally-protected freedom of expression." *Nixon*, 545 F.3d at 690. There is no harm to any party, including any person whose name is disclosed. An individual's identity as a member or former member of an execution team

10

can be lawfully disclosed at any time, at the discretion of Defendant, without any notice or recourse for the individual.

"It is always in the public interest to protect constitutional rights." *Id.* at 689. The public interest is served by allowing wide-access to information about Missouri's source for execution-drugs. This is particularly true here where previous disclosures have resulted in the scuttling of a scheduled execution and revamping of the execution protocol. Missourians rightfully have questions about the methods by which Department of Corrections officials obtain execution-drugs and the sources the Department uses to get its drugs. The public interest favors transparency, not the Department's efforts to shield its procurement of drugs from public scrutiny.

### III.     Conclusion

For the forgoing reasons, this Court should enter a temporary restraining order and preliminary injunction requiring Defendant to authorize Plaintiffs to disclose the identity of suppliers of execution drugs and the records which might disclose the identity of individuals as members or former members of an execution team, as defined by the execution protocol, or providing such other injunctive relief as is proper under the circumstances.

Respectfully submitted,

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827
GRANT R. DOTY, #60788
AMERICAN CIVIL LIBERTIES
    OF MISSOURI FOUNDATION
454 Whittier Street
St. Louis, Missouri 63108
Phone: 314/652-3114
Fax: 314/652- 3112

Attorneys for Plaintiffs

Certificate of Service

I certify that a copy of the foregoing was served upon defendants by placing the same in the First Class mail addressed as set forth below and by facsimile as set forth below on October 23, 2013:

George A. Lombardi
2729 Plaza Drive
Jefferson City, Missouri 65102

(573) 751-4099

/s/ Anthony E. Rothert

12