IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES OF MISSOURI FOUNDATION, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 13-04223-CV-C-BP<br>) |
| GEORGE LOMBARDI, | )<br>) |
| Defendant. | ) |

## ORDER

This matter comes before the Court on Defendant's Motion to Dismiss. (Doc. 13.) For the reasons discussed below, Defendant's Motion is **DENIED**.

### I. Background

Under Mo. Rev. Stat. § 546.720, the director of the Missouri Department of Corrections ("DOC") shall choose an execution team that consists of persons who administer or provide direct support for the administration of lethal gas or lethal chemicals. Mo. Rev. Stat. § 546.720.2. The statute further provides that the identities of those execution team members shall be kept confidential. *Id.* Moreover, "[a] person may not, without the approval of the director of the [DOC], knowingly disclose the identity of any current or former member of an execution team or disclose a record knowing that it could identify such a person." Mo. Rev. Stat. § 546.720.3. Any execution team member whose name is knowingly disclosed has a cause of action for actual and punitive damages against the person who violated § 546.720. *Id.*

In August 2013, Plaintiffs made a request under the Missouri Sunshine Law[1] to view information related to providers of Missouri's execution drugs. On October 8 and 18, 2013, the

---

[1] Mo. Rev. Stat. § 610.010, *et seq.*

DOC disclosed public records to Plaintiffs, who then scanned them and uploaded them to the Plaintiff American Civil Liberties Union of Missouri's webpage. These records revealed the identities of people and entities that supplied execution drugs for the State of Missouri. The DOC then issued a new execution protocol on October 18, 2013 that redefined the execution team to include: "[DOC] employees and contracted medical personnel including a physician, nurse, and pharmacist . . . [and] anyone selected by the [DOC] director who provides direct support for the administration of lethal injections, including individuals that prescribe, compound, prepare, or otherwise supply the chemicals for use in the lethal injection procedure." On October 22, 2013, Plaintiffs learned of the new execution protocol and removed from their webpage the documents they obtained under the Missouri Sunshine Law request to comply with § 546.720.

In their Complaint, Plaintiffs allege that § 546.720, as applied, is unconstitutional. Specifically, Plaintiffs allege that Missouri's newest execution protocol, which redefined the execution team to include the manufacturers and suppliers of drugs used in Missouri's lethal injection death penalty, when read in conjunction with the statute, infringes on their rights to free speech and due process under the United States Constitution. Plaintiffs allege that Defendant's discretion to authorize disclosure of execution team members under § 546.720 operates as a prior restraint on speech in violation of the First Amendment. Plaintiffs also allege that the statute is a content-based regulation on speech that is not narrowly tailored to achieve a compelling government interest, and does not provide ample alternatives to engage in protected speech and press activity. Additionally, Plaintiffs allege that § 546.720 violates the Due Process Clause because: (1) it fails to give them fair notice of whether the records they obtained identified

execution team members; (2) the definition of the execution team is broad and vague; and (3) it prohibits Plaintiffs from disclosing public records provided to them by the DOC.

Defendant moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support of his Motion, Defendant argues: (1) this Court has no Article III jurisdiction because Plaintiffs have no standing to bring their claims; (2) this suit is barred by the Eleventh Amendment as it is really against the State of Missouri; and (3) Plaintiffs have not stated plausible claims upon which relief can be granted. The Court takes up the parties' arguments below.

## II. Discussion

### a. Article III Jurisdiction

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must prove constitutional standing by showing: (1) an injury-in-fact, which is an invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of that is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the Court; and (3) a likelihood that the injury will be redressed by a favorable decision. *Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 791-92 (8th Cir. 2004). To establish injury-in-fact for a First Amendment challenge to a state statute, "the plaintiff needs only to establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). The issue then becomes whether the decision to chill one's speech is objectively reasonable. A decision to chill one's speech is objectively reasonable when

3

a plaintiff intends to engage in conduct that is arguably protected speech but prohibited by statute, and a credible threat of prosecution exists. *Id.*

Defendant argues this Court does not have Article III jurisdiction because any injury to Plaintiffs is too speculative and, therefore, is not fairly traceable to the action of Defendant and cannot be redressed by a favorable decision. Moreover, he contends that because the statute does not authorize Missouri or Missouri officials to prosecute or bring civil charges against Plaintiffs for violations of the statute, there is no case or controversy with Defendant. Defendant in part relies on *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001). In *Okpalobi*, the Fifth Circuit concluded that plaintiffs did not have standing in a suit against the state governor and attorney general. There, providers of abortion services challenged a statute that made them potentially liable for tort suits by mother and "unborn child." However, the statute did not contain any mechanism whereby the governor or attorney general could enforce the statute. Therefore, the Fifth Circuit concluded that the defendants did not cause the plaintiffs' injury and could not redress any injury and, as a result, plaintiffs had no controversy with the defendants. *Id.* at 426. Defendant asserts § 546.720 is similar in that Plaintiffs would only have injury-in-fact after they knowingly disclosed members of the execution team, and those members then successfully sued Plaintiffs for damages. Like *Okpalobi*, Defendant asserts he has no power to enforce violations of § 546.720 and Plaintiffs have no controversy with him.

Defendant's arguments misconstrue the Complaint. Plaintiffs are not arguing that § 546.720 is in and of itself unconstitutional; rather, they allege that the statute is unconstitutional as applied to the current execution protocol. Plaintiffs plead that they intend to engage in arguably protected speech by publishing the names of certain execution team members, but have refrained from doing so for fear of civil liability. Defendant's allegedly unconstitutional act –

4

that is the redefining of the execution team to include suppliers and manufacturers of Missouri's execution drug – caused a chilling effect on Plaintiffs' ability to engage in arguably protected speech, and caused their alleged injury. Additionally, Plaintiffs' self-censorship in this case is objectively reasonable because they would risk civil liability from disclosed execution team members, particularly the suppliers and manufacturers of Missouri's lethal injection drug. Thus, Plaintiffs allege they are suffering a present injury-in-fact. Further, Plaintiffs' injury can be redressed if this Court finds that § 546.720, as applied with the current execution protocol, infringes upon their First Amendment rights. Therefore, Plaintiffs have standing, this Court has Article III jurisdiction, and Defendant's Motion is denied on this ground.

    b.    **Eleventh Amendment**

The Eleventh Amendment generally bars suits against the state or an officer or agency of the state. *281 Care Comm.*, 638 F.3d at 632 (citation omitted). However, the courts have carved out an exception where a private party may sue a state officer in his official capacity to enjoin a prospective action that would violate federal law. *Id.* To plead this exception and survive a motion to dismiss under Rule 12(b)(1), the plaintiff must show the defendant official has some connection with the enforcement of the challenged law. *Reprod. Health Servs. v. Nixon*, 428 F.3d 1139, 1145-46 (8th Cir. 2005).

Defendant argues this suit is barred by the Eleventh Amendment because Defendant has no power to enforce § 546.720, nor does he have the power to authorize disclosure of execution team members to the public. Defendant again relies on *Okpalobi*, 244 F.3d 405, where the Fifth Circuit also found that the suit against the state governor and attorney general violated the Eleventh Amendment. Defendant contends this suit is really against the State of Missouri, in violation of sovereign immunity principles.

5

Defendant's argument fails. While Defendant does not appear to have direct power to enforce § 546.720, he does have the power to change the current execution protocol. As noted above, Defendant has a connection with an allegedly unconstitutional act because he has broad discretion to redefine the execution team to include or exclude persons or entities at any time, and in doing so he may chill Plaintiffs' ability to engage in arguably protected speech. Therefore, Defendant is involved with the enforcement of the execution protocol and § 546.720 as it is now applied. As such, Plaintiffs plead the exception to the Eleventh Amendment bar and Defendant's Motion is denied on this basis.

### c.     Failure to State a Claim under 12(b)(6)

Dismissal under Rule 12(b)(6) is proper where the plaintiff's complaint fails to state a claim upon which relief can be granted. *Cook v. ACS State & Local Solutions, Inc.*, 663 F.3d 989, 992 (8th Cir. 2011). The court dismisses a claim when the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss, the "court accepts as true all factual allegations but is not bound to accept as true a legal conclusion couched as a factual allegation." *Cook*, 663 F.3d at 992 (quotations omitted). Finally, the court must construe all reasonable inferences in favor of the non-moving party. *Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012).

Defendant first argues Plaintiffs have failed to state a plausible claim under the First Amendment because § 546.720 is not a prior restraint, as it: (1) requires no licensing or registration system regulating speech; (2) does not provide an official discretion to permit or deny speech; and (3) does not impose a state sanction for failure to comply with the statute. Defendant does not address whether the statute is a content-based regulation narrowly tailored to

6

Case 2:13-cv-04223-BP   Document 19   Filed 04/03/14   Page 6 of 9

achieve a compelling government interest. Plaintiffs respond that the statute gives Defendant the discretionary authority to decide whether Plaintiffs can engage in certain communications. They contend Defendant's ability to redefine the team forbids disclosure of drug suppliers under § 546.720 before any disclosure would occur, and Defendant can redress their injury by authorizing disclosure or reverting back to the previous definition of the "execution team."

A government regulation is a prior restraint when it requires obtaining permission from government officials to engage in protected expression. *See Near v. Minnesota*, 283 U.S. 697, 713 (1931). Affording unbridled discretion to a government official or agency to determine whether a person may engage in speech "constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988). "[T]he mere existence of . . . unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *Id.* As such, there is a heavy presumption of unconstitutionality against any regulation or licensing scheme that places a prior restraint on the exercise of protected expression. *Freedman v. Maryland*, 380 U.S. 51, 57 (1965). Prior restraints carry a heavier presumption against constitutionality than regulations that subsequently punish speech because of formidable "risks of freewheeling censorship." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975).

Plaintiffs have stated a viable First Amendment claim. Plaintiffs allege that § 546.720 gives Defendant the discretion to redefine the execution team to include more members. They further allege Defendant also has sole and unfettered discretion and authority to authorize or not the disclosure of execution team identities. This broad discretion and the fact that Defendant could bar future speech are the types of prohibition on speech considered to be prior restraints. Thus, Plaintiffs state a claim for violations of the First Amendment.

7

Defendant next argues Plaintiffs fail to state a due process claim because they have no plausible liberty interest. He specifically asserts that Plaintiffs' only liberty interest would be in having Defendant violate Missouri law to allow disclosure and subject himself to tort liability. Plaintiffs respond that § 546.720 deprives them of their fundamental right to freedom of speech by creating a chilling effect.

The Due Process Clause of the Fourteenth Amendment includes both procedural and substantive due process. *Singleton v. Cecil*, 176 F.3d 419, 425 (8th Cir. 1999). "Analysis of either . . . due process claim must begin with an examination of the interest allegedly violated . . . and the possession of a protected life, liberty, or property interest is a condition precedent to any due process claim." *Id.* (internal quotations and marks omitted). To assert a procedural due process claim, the plaintiff must initially demonstrate a deprivation of some "life, liberty, or property interest" arising under state law and, if successful, the plaintiff must then establish that deprivation was without sufficient process. *Peterson v. N. D. ex rel. N. D. Univ. Sys.*, 240 F. Supp. 2d 1055, 1063 (D.N.D. 2003) (citing *Krentz v. Robertson*, 228 F.3d 897, 903 (8th Cir. 2000)). Substantive due process "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Singleton*, 176 F.3d at 425. Those fundamental rights are created only by the Constitution. *Id.*

Plaintiffs have stated a viable due process claim. Plaintiffs allege that they are being deprived of their fundamental right to free speech by the chilling effect created by the statute. Moreover, they allege they did not have fair notice of what speech violates the statute. Thus, Plaintiffs state they have a liberty interest in that they were deprived of their fundamental right to free speech without fair notice and, therefore, sufficiently plead a procedural due process claim. To the extent Plaintiffs plead a substantive due process claim, it is analyzed in the same way as

8

the First Amendment claim, *see Cnty. of Sacremento v. Lewis*, 523 U.S. 833, 842 (1998) ("where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (quotation omitted)), and the Court finds they sufficiently plead it as well. Thus, Defendant's Motion is denied on this ground.

### III. Conclusion

Accordingly, Defendant's Motion to Dismiss, (Doc. 13), is **DENIED**.

**IT IS SO ORDERED.**

                                                  /s/ Beth Phillips
                                                  BETH PHILLIPS, JUDGE
                                                  UNITED STATES DISTRICT COURT

DATE: April 3, 2014