# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MISSOURI FOUNDATION, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 13-4223-CV-C-BP |
| GEORGE A. LOMBARDI, | ) ) ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment. (Doc. 44.) The Court previously found that Defendant is entitled to a ruling regarding Eleventh Amendment immunity before the merits of the case are addressed. (*See* Doc. 59.) Therefore, this Order only addresses the portion of Defendant's Motion pertaining to Eleventh Amendment immunity. (*See* Doc. 44, pp. 17-22; Doc. 56, pp. 7-12.) On October 14, 2014, the Court heard oral arguments on this issue. Having considered the parties' briefs and arguments, the Court hereby **DENIES in part** and **DEFERS RULING in part** on Defendant's Motion.

I. **Background**

   a. **Facts**[1]

Under Mo. Rev. Stat. § 546.720, the director of the Missouri Department of Corrections ("DOC") shall choose an execution team that consists of persons who administer or provide direct support for the administration of lethal gas or lethal chemicals. Mo. Rev. Stat. § 546.720.2. The statute further provides that the identities of those execution team members shall

---

[1] The Court has considered the parties' statements of material facts supported by evidence and drawn all inferences in favor of the non-movant. *Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724, 726 (8th Cir. 2012). Included in this section are facts that the Court concludes are uncontroverted and supported by the evidentiary record.

be kept confidential. *Id.* Moreover, "[a] person may not, without the approval of the director of the [DOC], knowingly disclose the identity of a current or former member of an execution team or disclose a record knowing that it could identify such a person." Mo. Rev. Stat. § 546.720.3. Any execution team member whose name is knowingly disclosed has a cause of action for actual and punitive damages against the person who violated § 546.720. *Id.*

In August 2013, Plaintiffs made a request under the Missouri Sunshine Law, Mo. Rev. Stat. § 610.101, *et seq*., to view information related to the DOC's execution protocol and execution team members. The DOC disclosed over 650 pages of records to Plaintiffs in response to the request. Plaintiffs then published some of those records on the Plaintiff American Civil Liberties Union of Missouri Foundation's webpage. Plaintiffs believed and still believe that these records reveal the identities of people and entities that supply execution drugs and support the administration of lethal injections for the State of Missouri. At the time Plaintiffs received the records, the execution protocol defined the execution team as including: a physician, nurse, or pharmacist who prepared the chemicals; a physician, nurse, or emergency medical technician who inserted intravenous lines, monitored the prisoner, and supervised the injection of lethal chemicals by nonmedical members of the execution team; and two department employees who injected the lethal chemicals into the prisoner. (*See* Doc. 44-1.)

The DOC issued a new execution protocol on October 18, 2013 that redefined the execution team to include: "[DOC] employees and contracted medical personnel including a physician, nurse, and pharmacist . . . [and] anyone selected by the [DOC] director who provides direct support for the administration of lethal injections, *including individuals that prescribe, compound, prepare, or otherwise supply the chemicals for use in the lethal injection procedure*." (Doc. 44-3, emphasis added.) On October 22, 2013, Plaintiffs learned of the new execution

2

protocol and, because they believed the published documents revealed the identities of execution team members and, therefore, violated § 546.720, they removed the documents from their webpage to comply with the statute.

### b. Allegations

In their Complaint, Plaintiffs allege that § 546.720, as applied, is unconstitutional. Specifically, Plaintiffs allege that Missouri's newest execution protocol, which redefined the execution team to include the manufacturers, suppliers, and pharmacies who prepare and supply the drugs used the lethal injection procedure, when read in conjunction with the statute, infringes on their rights to free speech and due process under the United States Constitution. Plaintiffs allege that Defendant's discretion to authorize disclosure of execution team members under § 546.720 operates as a prior restraint on speech in violation of the First Amendment. Plaintiffs also allege that the statute is a content-based regulation on speech that is not narrowly tailored to achieve a compelling government interest, and does not provide ample alternatives to engage in protected speech and press activity. Additionally, Plaintiffs allege that § 546.720 violates the Due Process Clause because: (1) it fails to give them fair notice of whether the records they obtained identified execution team members; (2) the definition of the execution team is broad and vague; and (3) it prohibits Plaintiffs from disclosing public records provided to them by the DOC.

### c. Parties' Arguments

During oral arguments and in Defendant's Motion for Summary Judgment, (Doc. 44), Defendant argues that he is immune from suit under the Eleventh Amendment. Defendant correctly states that generally, the Eleventh Amendment bars suits in federal court by a citizen of a state against the state or an office or agency of the state. *See 281 Care Comm. v. Arneson*, 638

3

F.3d 621, 632 (8th Cir. 2011). Defendant further contends that he does not meet the exception to Eleventh Amendment immunity, otherwise known as the *Ex Parte Young* doctrine. Defendant argues that the *Ex Parte Young* doctrine requires that a state official: (1) have some connection with enforcement of the allegedly unconstitutional statute; and (2) have the ability to enforce the statute, in that the official has threatened or is about to commence proceedings of a civil or criminal nature to enforce against the parties affected by an unconstitutional act. Relying on a recent Eighth Circuit decision, *281 Care Comm. v. Arneson*, 766 F.3d 774 (8th Cir. 2014), and a Sixth Circuit case, *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996), Defendant contends that he is entitled to Eleventh Amendment immunity because he has no ability to threaten to commence or commence proceedings against Plaintiffs to enforce § 546.720. Defendant explains that § 546.720 does not authorize the State or any of its officials (including Defendant) to commence criminal or civil proceedings against Plaintiffs or anyone else who knowingly discloses identities of execution team members. Rather, he contends that the statute only gives execution team members a cause of action for damages for disclosure of their identities.

Additionally, Defendant asserts that he does not have sufficient connection with enforcement of the statute because § 546.720 only affords him the authority to find a suitable place and necessary means to carry out executions, and does not give him the power to authorize disclosure of execution team members. Therefore, he lacks the ability to immunize Plaintiffs from private suits brought by execution team members. Moreover, Defendant argues that to conclude he is not immune from suit under the Eleventh Amendment because of his discretion to appoint and hire execution team members who can sue for damages under § 546.720 would

4

expand the *Ex Parte Young* doctrine and upset the balance between the federal government and the states.

Plaintiffs argue that to fall under the *Ex Parte Young* exception Defendant need not have authority to commence criminal or civil proceedings against Plaintiff but need only have some connection with enforcement of the allegedly unconstitutional law. Plaintiffs rely on two Eighth Circuit cases, *Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006) and *Mo. Protection and Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007), to argue that Defendant has sufficient connection with enforcement of the statute through his: discretion to name individuals to the execution team; discretion to broaden the definition of the execution team; ability to authorize disclosure of those team members; and ability to release the documents regarding execution team members to Plaintiffs. Therefore, Defendant falls under the exception to Eleventh Amendment immunity.

Additionally, Plaintiffs argue that the injury in this case is the chilling effect on their ability to engage in protected speech, which is distinct from the cases on which Defendant rely where the injury was civil or criminal penalties via a suit brought by the state official. Further, Plaintiffs contend that Defendant is in fact authorized to disclose members of the execution team, as he has authorized disclosure to his counsel in this case.

The Court takes up the parties' arguments below.

**II.    Analysis**

The initial question before the Court is whether application of the *Ex Parte Young* exception requires the defendant have the authority to commence proceedings, either civil or criminal, against the parties affected by an unconstitutional act. To decide this question, the Court first looks at the principles underlying the Supreme Court's opinion in *Ex Parte Young*,

5

209 U.S. 123 (1908). In that case, the Supreme Court held that "officers of the state, [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." *Ex Parte Young*, 209 U.S. at 155-56 (1908). The Supreme Court went on to articulate that a defendant state officer "must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.* at 157. In so holding, the Supreme Court explained the without such a connection to enforcement of the act, cases could be brought against state officials simply to test the constitutionality of a state which "would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law" but would violate the basic principles of the Eleventh Amendment prohibiting suits in federal court by a citizen of a state against the state or an office or agency of the state. *Id.*

The Court next looks at Eighth Circuit cases where the state official had no authority to commence civil or criminal proceedings under the statute in question yet the court concluded that the *Ex Parte Young* exception to applies. For example, in *Mo. Protection and Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007), plaintiff brought suit against the Missouri secretary of state and attorney general arguing that a state law disqualifying persons under court-ordered guardianship from voting violated his constitutional rights. Responding to defendants' arguments that they had no connection with enforcement of Missouri's laws regarding loss of voting rights, the Eighth Circuit found that under Missouri law the secretary of state is the "chief state election official responsible for overseeing of the voter registration process." *Id* at 807. (internal citations omitted) Finding that "[a] State's Eleventh Amendment immunity 'does not

bar a suit against a state official to enjoin enforcement of an allegedly unconstitutional statute, provided that such officer [has] some connections with the enforcement of the act[,]'" the Eighth Circuit concluded that the secretary of state's broad authority to register voters, and administer voting and elections was a sufficient connection with enforcement of the statute to fall under the *Ex Parte Young* exception. *Id.* (internal quotations omitted.)

In *Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006), plaintiffs brought suit against the Nebraska attorney general and governor seeking an order that a statute prohibiting same-sex marriage was unconstitutional. Although neither defendant had any authority to prosecute individuals affected by the law, the Eighth Circuit, in concluding it had jurisdiction to hear the suit, found that the governor and attorney general had "some connection with enforcement of the statute" and therefore, had a sufficient connection with the statute to fall under the *Ex Parte Young* exception. *Id.* at 864.

In reviewing the cases Defendant relies upon, the Court concludes they also support a conclusion that the *Ex Parte Young* exception does not require a defendant have the authority to commence civil or criminal proceedings against the parties affected by an unconstitutional act. For example in *281 Care Comm. v. Arneson*, 766 F.3d 774 (8th Cir. 2014), the plaintiff brought suit against the Minnesota attorney general and other state actors for violations of their right to free speech under a law that made it a crime to knowingly or with reckless disregard for the truth make false statements about a proposed ballot initiative. In analyzing the Eleventh Amendment immunity issue, the Eighth Circuit noted that "[t]he *Ex Parte Young* exception only applies against officials 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" *Id.* at 797 (internal citations omitted). However, critical to the Eighth Circuit's

7

holding was not evidence that the attorney general could commence criminal proceedings, but evidence that he had no intention of commencing proceedings against plaintiffs for violating the allegedly unconstitutional statute. Because the attorney general was not threatening or about to commence proceedings, the Eighth Circuit held that the attorney general was immune from suit under the Eleventh Amendment. *Id.*

The Sixth Circuit case Defendant relies on also supports the conclusion that a defendant need not have the authority to bring proceedings against a plaintiff to fall within *Ex Parte Young*. In *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412 (6th Cir. 1996), a children's rights organization brought suit against the state attorney general and prosecutors challenging statutes which provide exemption from the duty to provide adequate care to children and from prosecution for failure to provide such care. In explaining why the state officials are immune from suit under the Eleventh Amendment, the court stated that "*Young* abrogates a state official's Eleventh Amendment immunity when a suit challenges the constitutionality of a state official's *action*. *Young* was based on a determination that an unconstitutional state enactment is void and that any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity." *Id.* at 1415 (emphasis in original; citations omitted). When concluding the *Ex Parte Young* doctrine did not apply to defendants, the court found it relevant that plaintiffs were not complaining of any action by defendants but rather inaction and held "[t]his action also does not fall within the *Young* exception, because the plaintiffs do not seek to *enjoin* the enforcement of an allegedly unconstitutional statute." *Id.* at 1416 (emphasis in original).

Finally, in *281 Care Comm.*, the Eighth Circuit cited *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), a Tenth Circuit case that is also instructive to the Court's analysis. In *Kitchen*, same-sex couples brought suit against the governor and the county clerk of Utah, challenging

Utah's same-sex marriage laws. *Id.* at 1199. The Tenth Circuit stated that in order to fall under the *Ex Parte Young* exception, "[a]n officer need not have a special connection to the allegedly unconstitutional statute; rather, he need only have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Id.* at 1201 (citation omitted). The court articulated that plaintiffs sued the county clerk "based on their inability to obtain marriage licenses" and had "identified several harms that flow from this denial[.]" *Id.* The court concluded that because the county clerks were responsible for issuing marriage licenses and recording marriage certificates, the plaintiffs' injuries were caused by the county clerk's office and would be cured by an injunction prohibiting the enforcement of the challenged law. *Id.* at 1201-02. Thus, the Tenth Circuit held that the county clerk had sufficient connection to plaintiff's injury to be a proper defendant. *Id.* at 1202.

Based on the above analysis, the Court finds that *Ex Parte Young* requires the defendant have some connection with enforcement of the allegedly unconstitutional statute and have demonstrated some willingness to enforce the statute. *Ex Parte Young* does not and cannot require the state official have the authority to bring civil or criminal action against plaintiff. Such a conclusion would not only be contrary to appellate court analysis, but would also permit legislatures to enact unconstitutional laws but avoid constitutional review of those laws by simply eliminating any criminal or civil sanctions from the law.

Thus, the next question is whether Defendant falls under the *Ex Parte Young* exception. First, Defendant has the particular duty to enforce § 547.720 by developing and implementing an execution protocol and defining and redefining the execution team, thus determining whose identities shall be kept confidential. Contrary to Defendant's argument, the statute affords him more than simply the authority to find a suitable place and necessary means to carry out

executions.  Further, Defendant has demonstrated a willingness to carry out that duty by developing an execution protocol and repeatedly revising the protocol, including redefining members of the execution team.  *See Kitchen*, 755 F.3d at 1201 ("[a]n officer . . . need only have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.") (citation omitted).

Further, it is Defendant's allegedly illegal acts, acts that are authorized by the statute at issue, that are chilling Plaintiffs' speech and violating their First Amendment rights.  *See Papasan v. Allain*, 478 U.S. 265, 277 (1986) ("*Young* applies only where the underlying authorization upon which the named official acts is asserted to be illegal. . . . *Young*'s applicability has been tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States.") (internal quotation and marks omitted).  Plaintiffs' injury is not the fact that they are being threatened with suit of a civil or criminal nature by Defendant for any violation of the statute.  Rather, their injury is directly caused by actions taken by Defendant pursuant to § 546.720; specifically, Defendant's defining and redefining execution team has prevented Plaintiffs from publishing information they already have and thus chilled their right to engage in protected speech.  *See Kitchen*, 755 F.3d at 1201-02; *cf. Bishop v. Oklahoma*, 333 Fed. App'x 361, 365 (10th Cir. 2009) ("the alleged injury to [plaintiffs] could not be caused by any action of [defendant officials], nor would an injunction . . . against [defendants] give [plaintiffs the remedy] they seek.").

The Court concludes that this evidence is sufficient to show that Defendant has some connection with enforcement of § 546.720.  Therefore, Defendant falls under the *Ex Parte Young* exception and is not immune from suit under the Eleventh Amendment.

## III. Conclusion

Accordingly, the Court concludes that Defendant is not entitled to Eleventh Amendment immunity, and therefore Defendant's Motion for Summary Judgment, (Doc. 44), is **DENIED** on that issue. The Court **DEFERS RULING** on the remaining arguments in Defendant's Motion.

**IT IS SO ORDERED.**

                                        /s/ Beth Phillips
                                        BETH PHILLIPS, JUDGE
                                        UNITED STATES DISTRICT COURT

DATE:  November 7, 2014